IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-431-RJC-DCK

| DELSONYA WILKINS-BAILEY, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | **ORDER** |
| v. | ) ) ) | |
| ESSITY PROFESSIONAL HYGIENE NORTH AMERICA, LLC, | ) ) ) ) | |
| Defendant. | ) ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion To Compel Production Of Documents" (Document No. 25) filed June 27, 2024. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motion and the record, the undersigned will grant the motion in part and deny the motion in part.

I.  BACKGROUND

Plaintiff Delsonya Wilkins-Bailey ("Wilkins-Bailey" or "Plaintiff"), a Black female, initiated this action with the filing of a "Complaint" (Document No. 1) on July 18, 2023. The Complaint alleges that Defendant Essity Professional Hygiene North America, LLC ("Essity" or "Defendant") denied Plaintiff's requests for a religious exemption to Defendant's COVID-19 vaccine mandate and ultimately terminated her for noncompliance with the vaccine policy in a discriminatory and retaliatory fashion. (Document No. 1, pp. 6–12). Plaintiff asserts that "Defendant's COVID-19 mandatory vaccination policy was applied in an arbitrary, discriminatory, and biased manner, in violation of the standards of Title VII of the Civil Rights Act of 1964 [("Title VII")]." Id. at p. 11. Plaintiff alleges that Defendant discriminated against

her because of her religion and because of her race and retaliated against her for opposing racial discrimination. Id. at p. 17. The Complaint specifically asserts claims for: (1) religious discrimination and retaliation in violation of Title VII; (2) race discrimination and retaliation in violation of Title VII; (3) retaliation generally; and (4) discrimination and retaliation on the basis of race in violation of 42 U.S.C. § 1981. Id. at pp. 22–26.

"Defendant's Answer And Defenses To Plaintiff's Complaint And Jury Demand" (Document No. 11) was filed on September 5, 2023. Defendant contends "[e]ach and every action taken by Defendant with regard to Plaintiff's employment was based upon legitimate, non-discriminatory, non-retaliatory, and non-pretextual business reasons, and was based on reasonable factors other than those proffered by Plaintiff." (Document No. 11, p. 22). Defendant further asserts that it "acted at all times in good faith and consistently maintained, implemented, and enforced its workplace policy against discrimination and retaliation, and otherwise exercised reasonable care to prevent and correct promptly any claims of discrimination and retaliation." Id. Defendant also argues that "Plaintiff unreasonably failed to take advantage on a timely basis of any preventative or corrective safeguards, procedures, or measures provided by Defendant that would have remedied any alleged unlawful conduct, and Plaintiff unreasonably failed otherwise to avoid harm." Id.

Plaintiff filed the pending "Motion To Compel Production Of Documents" (Document No. 25) on June 27, 2024. "Defendant's Response In Opposition To Plaintiff's Motion To Compel Production Of Documents" (Document No. 29) was filed on July 11, 2024. "Plaintiff's Reply To Defendant's Opposition To Plaintiff's Motion To Compel Production Of Documents" (Document No. 30) was filed on July 18, 2024.

The pending Motion To Compel is now ripe for review and disposition.

## II. STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1945). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Whether to grant or deny a motion to compel is generally left within a district court's broad discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting District Court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

## III. DISCUSSION

Plaintiff advances claims based on theories of religious discrimination due to failure to accommodate, race-based discrimination due to disparate treatment and disparate impact, and retaliation for engaging in activity protected by Title VII. (Document No. 25-1, pp. 3–6). By the instant motion, Plaintiff contends that Defendant should be compelled to remedy deficiencies in its responses to Plaintiff's Requests For Production Of Documents Nos. 22 and 23. Id. at p. 1. Plaintiff "also asks this court to perform an 'in camera review' of redacted email exchanges…to

determine if an order compelling the Defendant to un-redact or re-produce is appropriate." Id. Lastly, Plaintiff moves pursuant to Fed.R.Civ.P. 37 "for payment of reasonable expenses incurred by Plaintiff in the preparation of [the instant] motion." Id.

In response, Defendant contends the Court "should deny Plaintiff's Motion because the confidential and/or privileged information that she seeks is neither relevant to her claims nor proportional to the needs of this case." (Document No. 29, p. 1).

The undersigned will consider Plaintiff's requests in turn.

### A. Requests For Production Of Documents Nos. 22 and 23

Plaintiff contends that Defendant should be compelled to remedy deficiencies in its responses to her Requests for Production of Documents Nos. 22 and 23. (Document No. 25, p. 1); (Document No. 25-1, p. 6). Plaintiff initially requested that Defendant produce "all documents regarding all request[s] for accommodation to Defendant's COVID-19 vaccination policy that were GRANTED (#22) or DENIED (#23) by the Defendant." (Document No. 25-1, p. 6). Plaintiff asserts Defendant "made a vast number of objections to the request and has produced NO documents related to any individual person who was granted or denied an accommodation," other than "two spreadsheets of purported aggregate data related to such request." Id. In her Motion To Compel, Plaintiff asks that the Court order Defendant to produce "(1) the names and races of individuals who sought exemption request letters in the two spreadsheets Essity provided" and "(2) the exemption request letters (along with name and race) of every single individual who was granted or denied a religious exemption from Essity's COVID-19 Vaccine Policy." (Document No. 30, p. 1).

### 1. Names And Races Of Individuals To Supplement Spreadsheets

Plaintiff asserts that additional identifying information—specifically, names and racial identities—is necessary to make sense of the spreadsheets produced by Defendant in response to her discovery requests.  Plaintiff asserts that the first spreadsheet produced by Defendant, Exhibit 3 (Document No. 26), "appears to be a master log from the CLEAR app Defendant used to keep track of their vaccinated employees at the time along with who submitted exemption requests and who [was] approved or not."  (Document No. 25-1, p. 7).  Plaintiff asserts that the second spreadsheet, Exhibit 4 (Document No. 26-1), "is an [E]xcel document that counsel for Defendant contends it created for Defendant that includes each person (identified by number) that requested an exemption…based on their stated religious beliefs, as well as their department, position, manager, location, self-disclosed racial identification, and the decision made on their exemption request."  (Document No. 25-1, p. 7).

Plaintiff contends the spreadsheets Defendant produced are inconsistent with one another and with Defendant's answers to interrogatories regarding the number of religious exemptions that were requested, approved, and denied.  Id. (citing Document No. 25-6).  Specifically, Plaintiff contends Exhibit 3 (Document No. 26) "indicates 24 people were approved for exemption and 22 denied across all their US office locations," whereas Exhibit 4 (Document No. 26-1) "indicates 12 people were approved for an exemption and 26 denied."  (Document No. 25-1, p. 7).  Plaintiff further contends "[b]oth of these spreadsheets differ from each other and [from] what Defendant answered in Interrogatory #6 indicating that a total of 40 people requested religious exemptions and 12 were approved and 25 were denied…which ultimately fails to account for three (3) of these 40 people."  Id.

Plaintiff further asserts that she repeatedly sought the names of the employees who requested exemptions, which Defendant has not provided. Id. at pp. 7–8. Plaintiff argues that "[i]dentifying information is especially important here since Plaintiff is receiving conflicting data from Defendant and there is no plausible way to cross-reference or understand what is being produced by the Defendant regarding which employees were granted exemption requests and which were not." Id. Thus, Plaintiff requests that the Court "compel the Defendant to produce names and race of individuals on the two spreadsheets Defendant provided." Id. at p. 8.

In response, Defendant addresses Plaintiff's claims of inconsistencies between data sets, asserting that Exhibit 3 (Document No. 26) "reflects *all* requests for exemption—including those based on medical grounds, as well as religious grounds," and "was produced as an attachment to an internal Essity email and is therefore only accurate as-of the date it was sent, December 1, 2021." (Document No. 29, p. 4 n.2). By contrast, Defendant asserts Exhibit 4 (Document No. 26-1) "reflects only religious exemption requests" and "is the most up-to-date list of individuals who requested religious exemptions from the Vaccine Policy." (Document No. 29, p. 4 n.2). Defendant asserts that "[t]he discrepancy between Essity's discovery responses and Exhibit 4 is due to a clerical error in the discovery responses—the correct number of religious exemption requests that were denied is 26," and "the reason that the number of religious exemption requests that were approved and denied do not total 40 (the total number of religious requests received) is that two employees withdrew and/or did not complete their requests." Id.

The undersigned cannot conclude that the discrepancies Plaintiff alleges present a sufficient need for production of additional identifying information to supplement these spreadsheets. Plaintiff asserts that Defendant's Response "did not attempt to address the conflicting data of the total number of approved and disapproved religious exemption requests

6

submitted." (Document No. 30, p. 4 n.2). This contention appears to overlook Defendant's clarifications of the data as outlined above. *Supra* p. 6; (Document No. 29, p. 4 n.2). Moreover, Defendant has already produced data including the racial identity of employees who submitted religious exemption requests and whether those requests were approved or denied. (Document No. 26-1). Considering the sensitive and personal nature of the information Plaintiff seeks, the undersigned is not persuaded that Plaintiff needs the names of other Essity employees who submitted religious exemption requests in order to make sense of this data.

### 2. Exemption Request Documents With Name And Race

Plaintiff also requests that the Court "compel the Defendant to provide the exemption requests (actual document, name, and race) of those who were granted a religious exemption to Defendant's COVID-19 vaccination policy," as well as those whose exemption requests were denied. (Document No. 25-1, p. 10). In support of these requests, Plaintiff contends comparator evidence is relevant to her race discrimination claims. Id. at pp. 8–9. Plaintiff contends that "every employee of the Defendant was required to either get vaccinated or file an exemption request, so everyone who sought a religious exemption such as Plaintiff, is a 'similarly situated individual' and thus a 'comparator' to Plaintiff for the purposes of her racial discrimination claim." Id. at pp. 9–10. Plaintiff asserts she "has alleged that Defendant was biased and engaged in discrimination in its application of its COVID-19 vaccination mandate and exemption process. Therefore, seeing request[s] of who was both denied and approved is important to show whether…Defendant's COVID-19 exemption process was applied in a discriminatory manner." Id. at p. 10.

Regarding the relevance of Plaintiff's requests to her race discrimination claims, Defendant argues:

> While comparator data may sometimes be relevant to disparate treatment and/or disparate impact claims, Plaintiff does not limit her

7

Case 3:23-cv-00431-RJC-DCK    Document 38    Filed 12/11/24    Page 7 of 14

> request to individuals who are truly comparators of her. Instead, Plaintiff seeks the disclosure of *every single exemption request* that was submitted, without any consideration of whether those individuals worked in the same location as Plaintiff or had a similar job.

(Document No. 29, pp. 8–9). Defendant contends that "plaintiffs are required to show that they are similar *in all relevant respects to their comparator*." Id. at p. 9 (citing Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010)). Defendant argues that "[t]he only potentially relevant comparators in this case would therefore be individuals outside Plaintiff's protected class who 'dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct' without mitigating or distinguishing circumstances." Id. (citing Haywood, 387 F. App'x at 359). Defendant further contends that "[a]s demonstrated in the data Essity has already produced, there are no individuals outside of Plaintiff's protected class who worked in a job comparable to Plaintiff's—let alone in the same department or reporting to the same supervisor—and who were *not* subject to the vaccination requirement and thus, there are no true comparators." (Document No. 29, p. 9).

Defendant also contends that "[t]he data Essity has produced also shows that Essity granted exemption requests from non-white employees at a significantly higher rate than requests from white employees, obviating any disparate impact claim and thus, any further request for comparator data." Id.

Defendant argues that "Plaintiff's Motion should be denied because her request for expansive discovery regarding non-party Essity employees is a classic fishing expedition that seeks information that is not only irrelevant…but also disproportional to the needs of this single-plaintiff litigation." Id. at p. 10. Defendant contends "Plaintiff has not even attempted to argue that the discovery she moves to compel is proportional to the needs of this litigation." Id.

8

Defendant asserts that "[i]n sum, the burden of compiling, reviewing, and producing other employees' accommodation requests is completely disproportionate to the minimal or nonexistent probative value of such information, particularly in light of the lack of disparate impact on non-white employees." Id. at p. 11.

In reply, Plaintiff reiterates her argument that "she was racially discriminated against by Defendant in their implementation of a *company-wide* COVID-19 vaccine mandate that applied to every non-union employee and contractor of the Defendant" and that therefore her comparators "are those persons who, like her, sought a religious exemption and were thus subject to the adjudication process of Defendant's human resource personnel, irrespective of their job department or who their supervisor was." (Document No. 30, pp. 2–3).

Plaintiff asserts that she "has sought the individual exemption request letters of both [those] who were approved or denied for a COVID-19 religious exemption regardless of their race because she is seeking both disparate impact and disparate treatment data." Id. at p. 3. Plaintiff writes that "for purposes of her disparate treatment claim, her comparators would be white employees who were approved a COVID-19 religious exemption by Defendant's human resource department," but "for her disparate impact claim, information regarding both minority employees and white employees who sought exemptions[,] whether approved or denied, [is] relevant to show any potential disparate impact data regarding the method and rate at which minority and non-minority employees were treated during the evaluation and approval process." Id. at pp. 3–4. As to Defendant's argument that it has obviated any need for further production regarding disparate impact, Plaintiff argues she "is unaware of any discovery rule that allows Defendant to cut off the 'valve' to discovery when they believe they have disproved the merits of Plaintiff's case." Id. at p. 5.

Plaintiff contends "it would not be difficult to pull the exemption request letters for roughly 40 people as [she is] certain Defendant's human resource department has kept this information in the regular course of their business operations in each person's personnel file." Id. at p. 7. Plaintiff thus contends her request is "proportional and necessary to the needs of [her] case." Id. at p. 8.

The undersigned is persuaded that the information Plaintiff seeks to compel is relevant to her race discrimination claims. To establish her claim of racial discrimination on a theory of disparate treatment, Plaintiff must prove "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). To establish her disparate impact claim, she "must show that [a] facially neutral employment practice had a significantly discriminatory impact." Abdur-Rahman v. Wells Fargo Bank N.A., No. 3:21-CV-207-RJC, 2022 WL 481788, at *6 (W.D.N.C. Feb. 16, 2022) (quoting Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 264–65 (4th Cir. 2005).

Plaintiff makes a compelling argument that her comparators for purposes of proving disparate treatment include all employees who sought a religious exemption to Defendant's COVID-19 vaccination policy. Additionally, Plaintiff's argument is persuasive as described above that all exemption requests, whether approved or denied, are relevant to her disparate impact claim.

In terms of proportionality, the undersigned finds Plaintiff's claims present a compelling need for comparator information that is otherwise difficult for her to access. According to Defendant, no more than forty religious exemption requests were submitted in total. See, e.g., (Document No 26-1). The undersigned is persuaded that the production of the exemption request letters for these roughly forty employees would not be disproportionate or unduly burdensome in relation to Plaintiff's claims. Thus, in the interests of permitting robust discovery between the

parties that is both relevant and proportional to the needs of the case, the undersigned will grant Plaintiff's request for production of all exemption request letters submitted by Essity employees.

However, the undersigned again does not find it necessary at this time for Plaintiff to obtain the names of these employees. Plaintiff seeks a breadth of information regarding other employees' personal and sensitive religious and medical decisions. Although there exists a Joint Protective Order (Document No. 20) in this case, the undersigned is mindful of the privacy interests of non-parties at stake here and cannot conclude that Plaintiff now requires the names of these individuals.

The undersigned will thus direct that Defendant produce all request letters submitted by Essity employees seeking religious exemptions to the COVID-19 vaccine mandate that were either approved or denied, appropriately redacted so as not to include names, and in accordance with the Joint Protective Order in this case (Document No. 20).

### B. In Camera Review Of Redacted Email Exchanges

Plaintiff also requests that the Court conduct an *in camera* review of redacted email exchanges produced by Defendant. (Document No. 25, p. 1). Plaintiff asserts these email exchanges between Essity human resources ("HR") personnel "have been redacted in such a manner that it is impossible to see [the responses of] Fred Albrecht, the HR director at the time of the adverse employment action...regarding Plaintiff's request for a religious exemption to Defendant's vaccination policy." Id. at p. 11. Plaintiff asserts that "Defendant insisted that every single one of these emails was forwarded to legal between Fred and his human resource department team and has indicated it has 'attorney-client' privilege as the basis of the redaction." Id. Plaintiff argues "it is unplausible that Fred, as the Director of HR, *never* responded to his colleagues and simply forwarded every email to legal to begin a conversation with them instead." Id.

Plaintiff thus requests that the Court conduct an *in camera* review of the emails to determine if they are properly redacted and requests that Defendant be compelled to produce unredacted versions of any unprivileged portions of these exchanges. Id. at pp. 11–12. Plaintiff also asks the Court to compel Defendant "to produce the email responses of [Mr. Albrecht] prior to the email chain of him forwarding to legal in 2022," as well as "all email responses of [Mr. Albrecht] for *any other emails* that involved conversations about Plaintiff." Id. at pp. 12–13.

In response, Defendant asserts it "has already produced all non-privileged responsive emails from Mr. Albrecht regarding Plaintiff's employment, including emails regarding her request for a religious exemption from Essity's vaccination requirement." (Document No. 29, p. 3 n.1). Defendant writes that "Essity does not oppose Plaintiff's Motion with respect to her request that Essity produce the four specified emails…for *in camera* review by the Court to determine whether the emails have been properly redacted." Id. at p. 11. Defendant asserts it "is confident that it has appropriately designated these documents as being subject to the attorney-client privilege and, accordingly, is willing to submit them for the Court's review." Id.

In reply, Plaintiff restates her request that the Court compel Defendant to produce "un-redacted versions of four specific emails for in camera review by the Court, as well as any non-privileged portions of those emails that have not been produced, if the Court identifies any," and "all emails reflecting conversations Mr. Albrecht had about Plaintiff." (Document No. 30, p. 1).

Noting no objection from Defendant, the undersigned will direct that Defendant submit unredacted versions of the four specified email exchanges for an *in camera* review by the Court in accordance with Plaintiff's request.

Regarding Plaintiff's request that the Court also compel Defendant to produce "*all* emails reflecting conversations Mr. Albrecht had about Plaintiff," (Document No. 30, p. 1) (emphasis

12

added), the undersigned notes Defendant's assertion that it "has already produced all non-privileged responsive emails from Mr. Albrecht regarding Plaintiff's employment." (Document No. 29, p. 3 n.1). The undersigned observes no reason to assume Defendant's untruthfulness on this point and thus finds Plaintiff's request to compel production of "all emails" overbroad.

### C. Attorneys' Fees and Expenses

Plaintiff further requests that the Court award "payment of reasonable expenses incurred by Plaintiff in the preparation of this motion," including attorney's fees, pursuant to Fed.R.Civ.P. 37. (Document No. 25, p. 1).

Defendant, by contrast, argues "the Court should instead award *Essity* the attorneys' fees it incurred in responding to Plaintiff's Motion." (Document No. 29, p. 12). Alternatively, Defendant argues that "[e]ven if the Court grants Plaintiff's Motion, in whole or in part, her request for attorneys' fees should nonetheless be denied, given that Essity's conduct in refusing to produce the requested information was substantially justified." Id.

In light of the substance of the parties' disagreement and the mixed disposition of Plaintiff's Motion To Compel, the undersigned will respectfully decline to award attorney's fees and expenses to either party at this time.

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion To Compel Production Of Documents" (Document No. 25) is **GRANTED in part** and **DENIED in part**, as described herein.

Specifically, Defendant shall produce the exemption request letters submitted by all Essity employees who were granted or denied a religious exemption to Defendant's COVID-19 vaccination policy, appropriately redacted so as not to include names, and in accordance with the Joint Protective Order in this case (Document No. 20).

13

Defendant shall also submit unredacted versions of the four email exchanges specified in Plaintiff's motion for *in camera* review by the Court.

**IT IS FURTHER ORDERED** that Defendant shall supplement its discovery responses on or before **December 20, 2024**.

**SO ORDERED**.

Signed: December 11, 2024

David C. Keesler
United States Magistrate Judge