UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

DELSONYA WILKINS-BAILEY,

                    Plaintiff,

v.

ESSITY PROFESSIONAL HYGIENE
NORTH AMERICA, LLC,

                    Defendant.

23-CV-00431 (TMR-DCK)

**<u>OPINION</u>**

Dated: July 24, 2025

<u>Erin E. Rozzelle</u>, The Freedmen Law Group, of Charlotte, N.C., argued for plaintiff
Delsonya Wilkins-Bailey.

<u>Emily C. DeSmedt</u>, Morgan, Lewis & Bockius LLP, of Princeton, N.J., and Tory I.
Summey, Parker Poe Adams & Bernstein LLP, of Charlotte, N.C., argued for
defendant Essity Professional Hygiene North America, LLC.

<u>TIMOTHY M. REIF, Judge, United States Court of International Trade, Sitting by
Designation:</u>

  Delsonya Wilkins-Bailey ("plaintiff") brings the instant action against Essity

Professional Hygiene North America, LLC ("defendant," or "Essity"), alleging: (1)

religious discrimination and retaliation in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.; (2) race

discrimination and retaliation in violation of Title VII; and (3) race discrimination

and retaliation in violation of Section 1981 of the Civil Rights Act of 1866 ("Section

1981"), 42 U.S.C. § 1981.

Plaintiff requests equitable and monetary relief in the form of lost wages, compensatory damages for emotional distress, punitive damages and liquidated damages. *See* Compl., ECF No. 1.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), defendant moves for summary judgment dismissing the complaint. Def.'s Mot. for Summ. J., ECF No. 46; Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def. Br."), ECF No. 47; Def.'s Reply in Further Supp. of Mot. for Summ. J. ("Def. Reply Br."), ECF No. 55. For the reasons discussed below, the court grants defendant's motion for summary judgment.

## BACKGROUND

### I.   Parties in the instant action

Plaintiff, a Black woman, was hired by BSN Medical Inc. in August 2016. Compl. ¶¶ 1, 7; Def.'s Answer and Defenses to Pl.'s Compl. and Jury Demand ("Answer") ¶¶ 1, 7, ECF No. 11. Defendant acquired BSN Medical in 2017. Def. Br. at 4; *id.*, Ex. C at 43:8-44:12.

Plaintiff was hired originally as an e-Commerce Coordinator. Compl. ¶ 7; Answer ¶ 7. Plaintiff later received a promotion to Customer Engagement Manager in July 2017. Compl. ¶ 12; Answer ¶ 12. The title of plaintiff's role changed to Sales Administrator in November 2019. Compl. ¶ 13; Answer ¶ 13. Throughout the course of her employment with defendant, plaintiff received yearly merit compensation increases, merit bonuses and recognition at certain times for her performance. Compl. ¶ 15; Answer ¶ 15.

Plaintiff has identified religiously as a Jehovah's Witness, a follower of the Nation of Islam and a Christian. Compl. ¶ 8. More recently, plaintiff described herself as a "God fearing woman striving to be Christlike." Def. Br., Ex. B ("Wilkins-Bailey Tr., Day 1") at 153:21-25.

Defendant is a global hygiene and health company that conducts business within the state of North Carolina. Compl. ¶ 2; Answer ¶ 2; Def. Br., Ex. A ¶ 2.

## II.    Factual background

On September 29, 2021, defendant announced its COVID-19 vaccination policy. Compl. ¶ 24; *id.*, Ex. 5 ("Vaccination Policy"); Answer ¶ 24. The Vaccination Policy required that U.S. employees of the company be fully vaccinated against COVID-19 by November 30, 2021, unless they demonstrated their eligibility for an accommodation. Compl. ¶ 24; Answer ¶ 24; Vaccination Policy at 2-3.

On or about October 4, 2021, through October 6, 2021, plaintiff discussed the Vaccination Policy with her human resources manager. Compl. ¶ 31; *id.*, Ex. 7; Answer ¶ 31. On October 10, 2021, plaintiff submitted a religious accommodation request for an exemption from the Vaccination Policy. Compl. ¶ 32; *id.*, Ex. 8; Answer ¶ 32. Sometime after plaintiff submitted her accommodation request, Fred Albrecht, the human resources director for defendant's North America branch, called plaintiff to discuss her request. Compl. ¶ 41; Answer ¶ 41. Plaintiff communicated to Albrecht that she did not intend to become vaccinated and had submitted a request for a religious accommodation. Compl. ¶ 43; Answer ¶ 43.

On November 19, 2021, defendant informed plaintiff that her accommodation request was denied because plaintiff was ineligible for a religious accommodation. Compl. ¶ 44; *id.*, Ex. 12; Answer ¶ 44.  Defendant explained that providing plaintiff's requested accommodation would create "an undue hardship for the company . . . [by posing] a health or safety risk to the individual and others." Compl. ¶ 45 (alteration in original); Answer ¶ 45.

On November 30, 2021, plaintiff received an email from Albrecht which stated that:  "Employees who choose not to comply with the Essity COVID-19 Vaccination Policy by November 30, 2021 will be considered to have abandoned their position at Essity on December 31, 2021 and the Company will process their separation as a voluntary resignation."  Compl. ¶ 62; Answer ¶ 62.

On December 3, 2021, a director of defendant's human resources department communicated to plaintiff that plaintiff's employment would be terminated if plaintiff chose not to comply with the Vaccination Policy by December 31, 2021. Compl. ¶ 64; Answer ¶ 64.  Plaintiff's direct supervisor, Steven McNickle, also participated in the December 3, 2021 call.  Compl. ¶ 67; Answer ¶ 67.

On December 6, 2021, Albrecht sent plaintiff an email in which he stated that the decision to deny the accommodation request "is final."  Compl. ¶ 74; *id.*, Ex. 13;

Answer ¶ 74.  Defendant terminated plaintiff's position in December 2021.[1]  *See* Pl.

Br. at 5; Def. Br. at 8.  Plaintiff filed and was approved for disability benefits after

her termination.  Compl. ¶ 83; Answer ¶ 83.

On June 1, 2022, plaintiff filed a Charge of Discrimination with the U.S.

Equal Employment Opportunity Commission ("EEOC"), alleging religious

discrimination, race discrimination and retaliation.  Compl. ¶ 97; *id.*, Ex. 19;

Answer ¶ 97.  Defendant submitted a position statement to the EEOC in which it

denied each of plaintiff's allegations.  Compl. ¶ 98; *id.*, Ex. 6; Answer ¶ 98.

On March 29, 2023, the EEOC determined that "there is a reasonable cause

to conclude that [Defendant] violated Title VII by failing to grant [Plaintiff's]

religious accommodation request and by discharging her based on her religion."

Compl. ¶ 102 (alterations in original) (quoting *id.*, Ex. 21 at 2); Answer ¶ 102.  The

EEOC stated that "the evidence obtained during the investigation was insufficient

to establish a Title VII violation for racial discrimination or retaliation.  This does

not, however, certify that [defendant] is in compliance with Title VII with respect to

[plaintiff's] race and retaliation allegations."  Compl. ¶ 102 (quoting *id.*, Ex. 21 at 2-

3); Answer ¶ 102.  The EEOC then offered that the parties discuss settlement

---

[1] Parties dispute the actual date on which defendant terminated plaintiff's
employment.  *Compare* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl. Br.") at
5 ("[Plaintiff] was . . . wrongfully terminated on Monday, December 6, 2021."), ECF
No. 51, *with* Def. Br. at 8 ("[Plaintiff] was placed on administrative leave, effective
December 6, 2021, and her employment terminated on December 31, 2021.").  The
resolution of this dispute is not essential to the court's decision.  *See infra*
Discussion Sections I-III.  For that reason, it suffices to state that parties agree that
the termination occurred in the month of December 2021.

options, but defendant refused to participate in any conciliation process.  Compl. ¶ 107; Answer ¶ 107.

On April 19, 2023, the EEOC terminated its conciliation efforts and determined that it would not bring a lawsuit against defendant.  Compl. ¶ 110; *id.*, Ex. 21 at 4; Answer ¶ 110.

## III.   Procedural history

On July 18, 2023, plaintiff filed her complaint.  Compl.  On January 24, 2025, defendant moved for summary judgment dismissing the complaint.  Def. Mot; Def. Br.  On June 12, 2025, this Court heard oral argument.  Oral Arg. Tr., ECF No. 64.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises subject matter jurisdiction over plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

FRCP 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).

"[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

Courts are "required to view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013). To defeat a summary judgment motion, the nonmoving party is required to point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Under this standard, '[t]he mere existence of a scintilla of evidence' is insufficient to withstand an adequately supported summary judgment motion." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702 (4th Cir. 2023) (alteration in original) (quoting *Anderson*, 477 U.S. at 252).

Finally, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020).

## DISCUSSION

## I.      Religious discrimination claims

### A.      Failure to accommodate

#### 1.      Legal framework

Pursuant to Title VII, it "shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

"As originally enacted, Title VII did not spell out what it meant by discrimination 'because of . . . religion,' but shortly after the statute's passage, the EEOC interpreted that provision to mean that employers were sometimes required to 'accommodate' the 'reasonable religious needs of employees.'" *Groff v. DeJoy*, 600 U.S. 447, 457 (2023) (alteration in original) (quoting 29 C.F.R. § 1605.1(a)(2)).  The statute defines "religion" to "include[] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

The U.S. Court of Appeals for the Fourth Circuit ("Fourth Circuit") has set out the following framework for analyzing religious accommodation claims:

> To establish a prima facie religious accommodation claim, a plaintiff must establish that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement."

*Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (quoting *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)); *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008).

## 2.    Analysis

It is undisputed that plaintiff has established the second and third elements of her prima facie religious accommodation claim:  plaintiff "informed" defendant of her belief regarding the COVID-19 vaccine and was terminated "for failure to

comply with the conflicting" Vaccination Policy. *See* Def. Br. at 6-8, 16; Pl. Br. at 4-5; *Chalmers*, 101 F.3d at 1019. Parties agree also that plaintiff is a religious person with sincere religious beliefs. *See* Pl. Br. at 18 ("Plaintiff is a religious person with bona fide religious beliefs."); Def. Reply Br. at 7 (acknowledging that "[plaintiff] is certainly religious and holds religious beliefs" but arguing that "those beliefs did not require her to object to the COVID-19 vaccine").

As a result, the court is left to consider whether plaintiff's specific belief regarding the COVID-19 vaccine is "a bona fide religious belief that conflicts with an employment requirement." *Chalmers*, 101 F.3d at 1019. The court concludes that it is not.

### a. Sincerity

"To qualify for Title VII protection, a plaintiff must show her professed belief is (1) sincerely held and (2) religious in nature." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 470 (4th Cir. 2025) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

The sincerity prong "seeks to determine an adherent's good faith in the expression of [her] religious belief and provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)); *Chinnery v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, No. 24-1697, 2025 WL 1733959, at *2 (4th Cir. June 23, 2025).

The Fourth Circuit has stated that "the inquiry into sincerity is 'almost exclusively a credibility assessment' and 'can rarely be determined on summary judgment, let alone a motion to dismiss.'" *Barnett*, 125 F.4th at 470 (quoting *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007)).  Even so, courts will evaluate sincerity on summary judgment where there is "no evidence to suggest" that a plaintiff's beliefs are "fraudulent, concocted for litigation, or otherwise not sincerely held." *Leonhartt v. MedStar Health, Inc.*, No. 1:23-CV-01211-JRR, 2025 WL 744077, at *7 (D. Md. Mar. 7, 2025); *see also Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 557 (E.D. Va. 2023) (stating that alleged religious beliefs are sincere where "there is no evidence introduced . . . that suggests that the beliefs have been concocted for litigation or are otherwise disingenuous").

Plaintiff asks the court to follow *Barnett* and argues that "there is a vast amount of evidence about what Plaintiff's religious beliefs are, and picking it apart at this stage, as Defendant has done in its Motion for Summary Judgment is improper."  Pl. Br. at 20.  Plaintiff insists that the sincerity inquiry "must be done by a jury" and that "the validity of Plaintiff's beliefs should not be decided at the summary judgment stage and should proceed to trial."  *Id.* at 20-21.

Defendant does not challenge expressly the sincerity of plaintiff's beliefs with respect to the COVID-19 vaccine.  Instead, defendant argues that plaintiff fails to establish her prima facie claim because the beliefs that prohibited her from becoming vaccinated against COVID-19 are "personal in nature."  Def. Br. at 15.  In

any event, the court concludes that there is no genuine dispute of material fact as to the sincerity of plaintiff's beliefs.

The complaint states that plaintiff "rejects the use of vaccines generally, and the COVID-19 vaccines specifically; and . . . believes that the Bible supports her religious belief that she should abstain from the COVID-19 vaccines."  Compl. ¶ 32c-d.  Plaintiff asserted in her accommodation request, inter alia:

> With all due respect, the authority and command that I honor and obey is the *Bible* and that authority is derived from GOD – my LORD. . . . Through my personal relationship, I give praise, honor and glory to the Savior of my soul first and foremost.  I don't smoke, drink alcohol and even have a strict diet watching sugar intake, gluten and any other altered additives that may harm my body – *my Temple.* . . .  I am a *non perfect* humble Christian but the substances (i.e., experimental tech to precious fetus/human samples etc) in these Covid 19 injections prevent me from getting any Covid-19 vaccination due to my *closely held religious beliefs*.

*Id.*, Ex. 8 at 3.

It is undisputed that plaintiff received one dose of the Hepatitis A vaccine as an adult.  Wilkins-Bailey Tr., Day 1 at 145:19-147:8; Def. Br. at 7; Pl. Br. at 5 n.1.  Plaintiff explained that she received the Hepatitis A vaccine after her exposure to blood contamination at a restaurant.  Wilkins-Bailey Tr., Day 1 at 145:24-146:6; Pl. Br. at 5 n.1.  Plaintiff expressed that her religious beliefs led her to feel apprehensive before she received the one dose.  *See* Wilkins-Bailey Tr., Day 1 at 146:7-25 ("[I]t was a long line of people and I kept saying to my husband, dear, you know how I feel and I don't think and he said, well, let's get up there and see what they say."); *id.* ("I say prayers, I don't care who hears, who knows.  Stood in line, said my prayers and I went

ahead and I took one dose.").  When asked the reason that plaintiff did not receive a second shot to complete the full dose of the Hepatitis A vaccine, she stated that she "felt like [her] body was fine, [and she] didn't have to put anything else in [her] temple."  *Id.* at 147:1-4.

In addition, plaintiff has never received a flu vaccine because she does not believe that she "need[s] it."  Def. Br., Ex. D ("Wilkins-Bailey Tr., Day 2") at 87:7-88:24.  Plaintiff stated:  "It's just a thing that I don't like putting anything in my body.  It just – it's backwards thinking to me."  *Id.* at 88:25-89:4.

Given plaintiff's longstanding and undisputed apprehension around vaccines, the court is unable to conclude that plaintiff's vaccine-related statements in her accommodation request were "animated by motives of deception and fraud."  *Barnett*, 125 F.4th at 470.  The fact that plaintiff took a single dose of a Hepatitis A vaccine does not undermine the sincerity of her vaccine-related beliefs, especially where plaintiff made that decision fearfully.  To that end, there is nothing to suggest that plaintiff's beliefs are "fraudulent, concocted for litigation, or otherwise not sincerely held." *Leonhartt*, 2025 WL 744077, at *7.  Plaintiff's religious accommodation claim meets the sincerity prong.

**b.    Religious in nature**

"The second prong, religious in nature, limits the factfinder's inquiry to a determination whether the beliefs professed are, in the claimant's own scheme of

things, religious." *Barnett*, 125 F.4th at 470 (cleaned up) (quoting *Patrick*, 745 F.2d at 157-158); *Chinnery*, 2025 WL 1733959, at *2. For this inquiry, "the claim of the adherent that her belief is an essential part of a religious faith must be given great weight." *Barnett*, 125 F.4th at 470 (quoting *Patrick*, 745 F.2d at 158); *Chinnery*, 2025 WL 1733959, at *2.

The EEOC has defined religious beliefs "to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1 (citing *Seeger*, 380 U.S. 163; *Welsh v. United States*, 398 U.S. 333 (1970)). And the Fourth Circuit has stated that the beliefs in question must be "plausibly connected with [plaintiff's] refusal to receive the COVID-19 vaccine." *Barnett*, 125 F.4th at 471 (citing *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 900-903 (8th Cir. 2024)); *accord Sturgill v. Am. Red Cross*, 114 F.4th 803, 808-811 (6th Cir. 2024).

Finally, a "genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984); *Rohrbough v. Wyeth Lab'ys, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990).

Defendant argues that plaintiff's "reasons for objecting to the COVID-19 vaccine are personal and secular." Def. Reply Br. at 7. Defendant explains that plaintiff "has religious beliefs and secular beliefs; her secular beliefs, and not her religious beliefs, led her to forgo vaccination." *Id.* Defendant asserts that "[d]espite [plaintiff's] claim, 'a reputation of being a woman of faith and a religious person' is

not the same as a bona fide religious belief *that conflicts with an employment requirement*." *Id.* (quoting Pl. Br. at 18).

According to the complaint, plaintiff "follows[] and . . . tries to adhere to the principles of the Bible." Compl. ¶ 32a. And plaintiff described the allegedly religious reasons for her objection to the COVID-19 vaccine in her accommodation request. *See* Compl., Ex. 8 at 3; *see also supra* Section I.A.2.a. Plaintiff's two main reasons may be categorized as (1) abortion-related reasons; and (2) body-as-a-temple reasons. The court will address first plaintiff's abortion-related reasons for her rejection of the COVID-19 vaccine.

Plaintiff stated that she heard colleagues allege that the COVID-19 vaccines contained experimental technology and fetus samples. *See, e.g.*, Wilkins-Bailey Tr., Day 1 at 200:5-12 ("I worked with colleagues that are medical professionals that worked around hospitals and doctors and sold doctors devices and products in the medical field and some of them that I work with, a lot of them I took to heart what they said."); *id.* at 200:17-21 ("I trusted in my fellow colleagues, especially upper echelon that were higher ups than me that would voice their opinions in chats or private text, group texts, chats, whatever."); *id* 201:5-13 ("I think [the reference to experimental technology] was something that I wrote because it was someone, as I said, someone I regarded and respected at Essity that I know in my heart believe would not lie . . . .").

However, plaintiff later conceded that her objection was not based on the purported presence of fetus samples in the vaccines. *See id.* at 201:23-203-6.

Plaintiff testified that her "mind was already made up" to not take the vaccine before she learned of her colleagues' abortion-related objections to it.  *Id.* at 202:6-14.

Accordingly, the undisputed facts demonstrate that plaintiff did not object in actuality to the vaccine on the grounds of "precious fetus/human samples."  Compl., Ex. 8 at 3.  For that reason, such grounds cannot demonstrate that plaintiff's beliefs are religious in nature.  *Cf. Leonhartt*, 2025 WL 744077, at *7 (concluding that plaintiff's objections against the COVID-19 vaccine were religious in nature because her detailed affirmation of her anti-abortion beliefs, "in conjunction with her citation of her Church's guidance regarding the morality of receiving the COVID-19 vaccine" and a letter from her priest, "demonstrate[d] the religious nature of her opposition to the vaccine mandate"); *Davis v. Reliance Test & Tech., LLC*, No. CV DKC 22-1760, 2025 WL 266664, at *6 (D. Md. Jan. 22, 2025) (concluding that a plaintiff's assertion in his religious accommodation request that he is a "baptized Catholic Christian," and that he must "refuse the use of medical products including certain vaccines and gene therapy, that are produced using human cell lines derived from direct abortions" was sufficient evidence that his professed beliefs were religious in nature).  The court will address next plaintiff's body-as-a-temple reasons for her rejection of the vaccine.[2]  *See* Compl. ¶ 32b.

---

[2] Plaintiff cites the following Bible verse in her accommodation request:  "Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God?  You are not your own, for you were bought with a price.  So glorify God in your body."  1 *Cor.* 6:19-20; *see* Compl., Ex. 8 at 3.

When asked whether plaintiff would consider taking the flu vaccine in light of her pre-existing medical conditions, plaintiff stated:

> So I don't look at it in terms of doctors throwing it in my face, I need to take it. I have to examine and research and understand what it is that they're trying to make me administer into my body. And my body is my temple.

Wilkins-Bailey Tr., Day 2 at 87:24-88:3. Plaintiff later stated:

> If I don't feel like it's something that God wants me to impose on myself, in myself, my temple, that's it. That's all it takes. . . . I don't know what all the vaccines causes. This is my temple. And until God pricks my spirit to think otherwise, I have not – I don't see why I would take something that's poisonous in my mind and put it in my body. And anything poisonous to me in terms of man made products, I have to – it's not natural. That's how I feel.

*Id.* at 141:11-14, 143:19-25.

As mentioned above, plaintiff has identified religiously as a Jehovah's Witness, a follower of the Nation of Islam and a Christian. Compl. ¶ 8. It is undisputed that the Nation of Islam discourages its followers from receiving vaccinations. *See id.*, Ex. 9. However, the following exchange occurred in the deposition of plaintiff:

> Q:   So P15 is an article in which it states that Jehovah's Witnesses are not opposed to COVID-19 vaccination, correct?
>
> A:   Uh-huh.
>
> Q:   And it says that Jehovah's Witnesses believe that whether to get vaccinated is a personal decision for each Christian to make?
>
> A:   There you go. It's a personal decision.
>
> Q:   Is that your belief as well?

A:      Absolutely.

Q:      So none of your religious beliefs require you to object to COVID vaccination; is that right?

A:      Nor does it require me to accept it.

Q:      Right.  So it's up to you as an individual to make that decision?

A:      Yes, ma'am.

Wilkins-Bailey Tr., Day 1 at 157:21-158:11.

In *Foshee v. AstraZeneca Pharm. LP*, No. CV SAG-23-00894, 2023 WL 6845425 (D. Md. Oct. 17, 2023), a court in this circuit explained that "beliefs amounting to a declaration that an employee has the right to make unilateral decisions do not constitute religious beliefs, even where religion is expressly invoked in communicating the beliefs."  *Id.* at *4; *see also Bodtker v. Wal-Mart Inc.*, No. 1:21-CV-00213-MR-WCM, 2024 WL 3240658, at *6 (W.D.N.C. June 27, 2024).

And in *Ellison*, another court in this circuit considered specifically a plaintiff's claims that "as a Christian, he has a right to refuse the [COVID-19] vaccine" because "the Bible requires Christians to treat their bodies as 'temple[s] of the Holy Spirit,' meaning that he is 'compel[ed]' to care for his mind and body."  692 F. Supp. 3d at 558 (second and third alterations in original).  The Court concluded that "though couched in religious terms, Ellison refused the vaccines based on concerns of vaccine safety."  *Id.*  The Court noted that the plaintiff supported his claims "through references to his 'personal analyses' of CDC and FDA databases that he believe[d] prove" the harmfulness of the vaccine.  *Id.*  For that reason, the Court dismissed the plaintiff's "body-as-a-temple claims."  *Id.*

The instant case is analogous.  Plaintiff did not offer personal analyses of data, but her claims are nonetheless "based on concerns of vaccine safety" even if they are "couched in religious terms."  *Id.*  In her accommodation request, plaintiff expressed concern over "experimental tech . . . in the[] Covid 19 injections."  Compl., Ex. 8 at 3.  Moreover, plaintiff has demonstrated a general preference for natural remedies over "man made medicines."  *See* Wilkins-Bailey Tr., Day 2 at 35:23-36:1; *id.* at 36:8-11 (noting that she selected a physician after learning that "their method is to exhaust always naturally and then try to bring in man made products, different things like that, medicines"); *id.* at 143:19-25 ("I don't know what all the vaccines causes.  This is my temple.  And until God pricks my spirit to think otherwise, I have not – I don't see why I would take something that's poisonous in my mind and put it in my body.  And anything poisonous to me in terms of man made products, I have to – it's not natural.").

As discussed, plaintiff concedes that none of her religious beliefs requires her to object to the COVID-19 vaccine.  *See* Wilkins-Bailey Tr., Day 1 at 157:21-158:11. It is insufficient for the purposes of the prima facie claim to say that, on the other hand, none of her beliefs "require[s] [her] to *accept*" the vaccine either.  *Id.* (emphasis supplied).  The point is that plaintiff's vaccine-related beliefs do not go to "an essential part of a religious faith" and are thereby not religious in nature. *Barnett*, 125 F.4th at 470.

Accordingly, plaintiff has not established her prime facie failure to accommodate claim. Defendant's motion for summary judgment is granted as to this point.

## B.    Disparate impact

In its opening brief, defendant argues that plaintiff's "religious discrimination disparate treatment claim (to the extent she brings one) also fails." *See* Def. Br. at 20-22.

Plaintiff does not address defendant's arguments regarding a potential disparate treatment claim. *See* Pl. Br. at 17 ("Defendant is not entitled to Summary Judgment on Plaintiff's religious discrimination claim under Title VII because Wilkins-Bailey has established a prima-facie [sic] claim for *failure to accommodate*." (emphasis supplied)).

The Fourth Circuit has affirmed that "[a]gainst . . . well-reasoned arguments for summary judgment, the plaintiff's failure to respond amounts to an effective waiver of [those] claims." *Jimoh v. Charlotte-Mecklenburg Hous. P'ship, Inc.*, No. 3:08-CV-495-RJC-DCK, 2010 WL 1924480, at *3 (W.D.N.C. May 12, 2010), *aff'd*, 428 F. App'x 241 (4th Cir. 2011); *accord Brand v. N.C. Dept. of Crim. Control and Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (concluding that "[b]y failing to respond, Plaintiff concedes that he has not stated a hostile work environment claim").

For that reason, defendant's motion for summary judgment is granted as to any religious disparate treatment claim that plaintiff may have brought.

## II.     Race discrimination claims

### A.     Legal framework

Pursuant to Title VII, it "shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1). Pursuant to Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts."  *Id.* § 1981(a).  And because the "at-will employment relationship is contractual . . . such relationship may therefore serve as predicate contracts for § 1981 claims."  *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018-19 (4th Cir. 1999).

The Fourth Circuit has clarified that the elements of race discrimination claims brought under Title VII and Section 1981 "are effectively the same" and should be reviewed together.  *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 219 (4th Cir. 2016); *Krehbiel v. BrightKey, Inc.*, No. 22-1385, 2023 WL 7984747, at *1 n.* (4th Cir. Nov. 17, 2023).  At the summary judgment stage, race discrimination claims brought pursuant to Title VII and Section 1981 are evaluated under the three-step, burden-shifting framework set forth by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019).

The first step of the *McDonnell Douglas* framework requires that the plaintiff establish a prima facie case of race discrimination. *Id.*; *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025). To establish a prima facie race discrimination claim, a plaintiff must demonstrate: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Second, if a plaintiff establishes her prima facie claim, then the burden shifts to the employer "to provide a legitimate, nondiscriminatory reason for the adverse employment action." *Haynes*, 922 F.3d at 223. Third, if the employer "meets th[e] burden of production, the employee must then demonstrate that the defendant's proffered reason is pretextual." *Id.*

## B.    Analysis

It is undisputed that plaintiff has established three of the four elements of a prima facie race discrimination claim. Plaintiff, as a Black woman, holds "membership in a protected class." *Coleman*, 626 F.3d at 190; 42 U.S.C. § 2000e-2(a). Defendant disputes that plaintiff was an "exemplary employee," Compl. ¶ 15; Answer ¶ 15, but does not dispute that plaintiff "was promoted, received yearly merit increases and bonuses, and was recognized at times for her work performance." Compl. ¶ 15; Answer ¶ 15. For that reason, plaintiff has demonstrated "satisfactory job performance" such that the second element of her prima face claim is met. *Coleman*, 626 F.3d at 190. Parties agree also that plaintiff

was subject to an "adverse employment action" in the form of her separation from defendant in December 2021.  Def. Br. at 8; Pl. Br. at 5.

Accordingly, the remaining question before the court is whether plaintiff received "different treatment from similarly situated employees outside the protected class."  *Coleman*, 626 F.3d at 190.  The court concludes that plaintiff did not.

### 1.    Margaret Hilborn as comparator

A plaintiff can establish the fourth element of her prima facie race discrimination claim by demonstrating that "comparators," similarly situated employees who are not members of the protected class, were treated differently.  *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010).

Plaintiff identifies Margaret Hilborn as a comparator for her race discrimination claim.  *See* Compl. ¶¶ 48-58; Pl. Br. at 9-14.  Hilborn, a white woman, is a former employee of defendant who worked in the rebates department of Essity.  Compl. ¶ 48; Def. Br., Ex. E ("Hilborn Tr.") at 21:1-10.  Hilborn objected to the Vaccination Policy and decided to retire instead of seeking a religious accommodation.  *Id.* at 64:17-73:25, 83-85.  Defendant later asked Hilborn to continue at Essity past December 31, 2021, as an independent contractor.  *Id.* at 92:21-97:9.  Hilborn worked as an independent contractor until April 2022.  *Id.* at 53:16-22, 96:18-97:9.  At no point did she become vaccinated.  *Id.* at 69.  Defendant did not offer a similar independent contractor arrangement to plaintiff.  *Id.* at 150-151.

The Fourth Circuit has stated that "plaintiffs are required to show that they are similar in all relevant respects to their comparator." *Haywood*, 387 F. App'x at 359; *Spencer v. Va. State Univ.*, 919 F.3d 199, 207-208 (4th Cir. 2019). In making this determination, courts in this circuit typically consider "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Spencer*, 919 F.3d at 207 (quoting *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)); *see also Thomas v. City of Annapolis, Md.*, 851 F. App'x 341, 347 (4th Cir. 2021).

However, in a situation such as this one, the sole "relevant" factor in making the comparator determination is whether the plaintiff and her proposed comparator submitted religious accommodation requests. It is not clear that the job descriptions, supervisory structure or qualifications of two employees have any bearing on whether their employer applied a company-wide vaccination policy consistently.

Hilborn, unlike plaintiff, did not seek a religious accommodation from defendant. *See* Compl. ¶ 52. She decided to retire instead. *See* Hilborn Tr. at 65-66, 71-72. The two individuals differ on the sole "relevant respect[]" on which they should be compared. *Haywood*, 387 F. App'x at 359. For that reason, plaintiff has not established Hilborn as a valid comparator for her prima facie race discrimination claim.

### 2.    Other white employees

Plaintiff argues also that defendant approved the accommodation requests of "several of [plaintiff's] white colleagues who expressed the same logic to support their sincerely held religious beliefs."  Pl. Br. at 14.  The identities of the other white employees are unknown, as are their job descriptions and backgrounds.  Regardless, plaintiff and the other white employees are similarly situated in that they sought religious accommodation requests at the same time and through the same administrative process.  *See supra* Section II.B.1.

Assuming arguendo that the other white employees are valid comparators, defendant's varying treatment of the white employees' requests indicates that plaintiff did not receive "different treatment from similarly situated employees outside the protected class" that would establish the fourth element.  *Coleman*, 626 F.3d at 190.

To start, plaintiff insists that the approved accommodation requests resemble her denied request in six ways:

> [B]oth Wilkins-Bailey and these white employees of faith express (1) their body is their temple which prevents them from putting substances into it, altering it, or modifying it; (2) recognizing their body's natural immune system and respecting it the way God made it as not to alter it; (3) recognizing their conscious [sic] and following the "holy bible and holy spirit"; (4) expressed concerns about taking the COVID-19 vaccine because of the usage of aborted fetal cells in the testing and production of the vaccines which was against their religious beliefs; (5) expressed their willingness to get tested frequently and ability to work remotely as an alternative to being vaccinated; and (6) indicated they had not taken any vaccines either ever or in their adult lives.

Pl. Br. at 15 (citing *id.*, Ex. E).

Defendant argues that plaintiff's "cherry-picked sample" of religious accommodation requests "does not contain any evidence that Essity treated her less favorably than white comparators because each of the accommodation requests that Wilkins-Bailey attached to her Response is distinguishable." Def. Reply Br. at 3-4. Defendant notes that "[s]everal of the white employees whose accommodation requests Essity denied also referenced fetal cells in their requests, just as Wilkins-Bailey did." *Id.* at 6.

Of the granted accommodation requests that plaintiff attaches, several provide more detail than plaintiff's request as to the connection between the employee's religious beliefs and specific objections.[3] However, other granted requests contain statements that offer the same level of depth as plaintiff's statements. *See, e.g.*, Pl. Br., Ex. E at 9 ("[M]y conscience does not permit me

---

[3] *See, e.g.*, Pl. Br., Ex. E at 15 ("My religion is Greek-Melkite Catholic, and we do not support or believe in abortion as well as birth control. . . . I have found that the production of said vaccines have used fetal cell lines of aborted fetus's in the testing and production phases. This is where my sincerely held religious belief's come into play as I have a strong stance against abortion as I believe that all human life is sacred and begins at the moment of conception."); *id.* at 21, 23 (stating that "there are components within the vaccine 'Aborted human fetal tissue' that goes against everything I believe in and I cannot and will not disobey the Lord" and attaching a letter of support from their pastor); *id.* at 34, 36 ("All three covid-19 vaccines use cell lines originating from aborted babies in their manufacturing and testing. As a Christian, I believe life begins at conception. . . . The covid-19 vaccines were developed and tested using cell lines that were generated from tissues of aborted fetuses. J&J used aborted fetal cell lines in its manufacturing. Moderna and Pfizer used aborted fetal cell lines in the testing of their vaccines."); *id.* at 40 ("I have strong convictions concerning abortion. Fetal cells were used in the making and testing of the Covid-19 vaccines. Passages from the Bible - including Exodus 21:22-25, Psalm 139:13-16, Jeremiah 1:4-5 and Luke 1:39-45, all affirm the personhood of the unborn. I believe that receiving the Covid-19 vaccine would be a violation of my conscience and supports the killing of unborn children in the womb.").

to undergo certain medical interventions. Specifically, I cannot violate my
conscience to participate in an activity, such as COVID-19 vaccination, that is
designed to alter my God-created immune system."). One white employee
who was granted an accommodation stated the following:

> I do not believe in vaccines and I put my faith in God and that he will
> protect me. . . . I have declined every vaccine. I have never actively set
> out to obtain a vaccine in my adult life. Approximately 20 years ago I
> had a rusty nail through my foot. *My doctor whom I trusted advised I
> get a Tetanus shot which I never believed to be a vaccine rather a reactive
> treatment.* My doctor is aware that I was infected with COVID-19 in
> 2021 and aware of my positive antibody test and supported my
> belief/reason for declining the COVID-19 vaccine.

*Id.* at 28-30 (emphasis supplied). This individual's experience receiving a
Tetanus shot in extenuating circumstances resembles plaintiff's experience
receiving the Hepatitis A vaccine after her exposure to blood contamination.
*See* Wilkins-Bailey Tr., Day 1 at 145:19-147:8.

Defendant argues that "[i]n contrast to [plaintiff's] cursory, inaccurate
suggestion that COVID-19 vaccines contain 'fetus/human samples' and
'experimental tech,' the language from the requests that Essity approved
made clear (1) that the employees submitting them are anti-abortion because
of their religious beliefs, (2) the vaccines were developed and/or manufactured
using cells from an aborted fetus, and therefore, (3) receiving the vaccine
violated their anti-abortion beliefs." Def. Reply Br. at 5-6. But such qualities

are reflected also in certain requests of white employees that defendant *denied*.[4]

The sample of accommodation requests before the court indicates that white employees who offered substantially similar explanations with respect to abortion-related and body-as-a-temple beliefs had their requests granted in some cases and denied in others.  This set of results may demonstrate a lack of disciplinary consistency on the part of defendant, but it does not demonstrate a preference for white employees over Black employees with respect to religious accommodation requests.  For that reason, plaintiff does not establish that plaintiff received "different treatment from similarly situated employees outside the protected class" for the purposes of her prima facie race discrimination claim.  *Coleman*, 626 F.3d at 190.

Accordingly, defendant's motion for summary judgment is granted as to the race discrimination claim.

---

[4] *See, e.g.*, Def. Reply Br., Ex. G, Ex. 1 at 9 ("I am . . . anti-abortion and any product that was created either during the research and development phase or otherwise which uses fetal tissue is in direct conflict with my sincere faith.  The COVID 19 vaccines violate this belief as well."); *id.* at 15 ("As a Christian I strongly oppose abortion.  Based on my extensive research on the Covid-19 vaccine to make an informed decision, I could not overlook that fetal cell lines were used in the testing and production phases of this vaccine. . . .  I believe that life begins at conception and the thought of putting something into my body that stems from an aborted fetus goes against everything that I believe."); *id.* at 39 ("All of the vaccines have used aborted fetal cell lines in the development of the vaccine.  The Bible clearly states that human life begins at conception, Psalm 139:13-16 and consequently any baby that is aborted is murder based on scripture.").

### III.    Retaliation claims

Plaintiff brings various retaliation claims in her complaint.  *See* Compl. ¶¶ 111-134.  But in her response brief, plaintiff does not address defendant's arguments regarding the alleged retaliation.  *See* Pl. Br.  Plaintiff's silence constitutes a waiver of these claims. [5]  *See Jimoh*, 2010 WL 1924480, at *3 ("Against . . . well-reasoned arguments for summary judgment, the plaintiff's failure to respond amounts to an effective waiver of [those] claims.").  Accordingly, defendant's motion for summary judgment is granted as to all retaliation claims in the complaint.

### CONCLUSION

For the reasons discussed above, the court **GRANTS** defendant's motion for summary judgment.

The Clerk of the Court is respectfully directed to terminate the open motion at ECF No. 46.


/s/ Timothy M. Reif

Dated: July 24, 2025              Timothy M. Reif, Judge
New York, New York              United States Court of International Trade
                                *Sitting by Designation*
                                United States District Court for the
                                Western District of North Carolina

---

[5] Plaintiff conceded to the waiver at oral argument.  *See* Oral Arg. Tr. at 73:6-14.